IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITADEL SECURITIES LLC, RONIN CAPITAL, LLC, SUSQUEHANNA SECURITIES and SUSQUEHANNA INVESTMENT GROUP,<br><br>      Plaintiffs,<br> v.<br><br>CHICAGO BOARD OPTIONS EXCHANGE, INC., INTERNATIONAL SECURITIES EXCHANGE, LLC, NASDAQ PHLX LLC (f/k/a Philadelphia Stock Exchange, Inc.), NYSE ARCA, INC. (f/k/a Pacific Exchange, Inc.), NYSE MKT LLC (f/k/a NYSE Amex LLC, f/k/a American Stock Exchange LLC),<br><br>      Defendants. | Case No. 16 C 9747<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Citadel Securities LLC, Ronin Capital, LLC, Susquehanna Securities and Susquehanna Investment Group sued defendants Chicago Board Options Exchange, Inc., International Securities Exchange, LLC, NASDAQ PHLX, LLC, NYSE ARCA, Inc. and NYSE MKT, LLC in the Circuit Court of Cook County, Illinois, seeking to recover fees allegedly improperly charged to and paid by plaintiffs to defendants under certain "payment for order flow" ("PFOF") or "marketing fee" programs established by each defendant. Defendants have removed the case to this court pursuant to 28 U.S.C. § 1441(a), asserting original and exclusive jurisdiction under 28 U.S.C. § 1331 and/or 15 U.S.C. § 78aa because, according to defendants, the action alleges and seeks relief based on violations of rules promulgated under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78 et seq., and defendants' duty under that Act to follow those rules. Plaintiffs have moved to remand, arguing that they have alleged

violations of state law only, leaving this court without subject matter jurisdiction. For the reasons described below, the motion is denied.

## BACKGROUND

Defendants are all National Securities Exchanges registered with the Securities Exchange Commission ("SEC") that operate as self regulatory organizations ("SROs"). As SROs, defendants are part of a comprehensive system adopted by Congress for regulating the securities markets. See In re Series 7 Broker Qualification Exam Scoring Litig., 548 F.3d 110, 114 (D.C. Cir. 2008). The Exchange Act authorizes and requires defendants to adopt rules governing the conduct and administration of the exchanges and their members. See 15 U.S.C. §§ 78f(b), 78s(b). These rules must "provide for the equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using its facilities." 15 U.S.C. § 78f(b)(4). The SEC has broad authority to amend the SROs' rules. 15 U.S.C. § 78s(c).

Plaintiffs are market maker member firms of defendant exchanges. Plaintiffs allege that during the period in question each defendant exchange ran a "program" under which that exchange collected PFOF fees. PFOF is an arrangement by which a broker receives payment from a market maker in exchange for sending order flow to them. The fees are imposed to attract "order flow" to a market, thereby increasing liquidity and benefitting investors. Defendants have adopted rules creating the PFOF programs under which defendants imposed fees "designed to insure that market makers that may trade with customers on the Exchange[s] contribute to the cost of attracting order flow." See SEC Concept Release, A Competitive Developments in the Options Markets, 69 Fed. Reg. 6124, 6129 (Feb. 9, 2004). Defendants impose PFOF fees on a market maker when a trade is made for a "customer," but not trades

2

made for proprietary "house trades," where a firm trades on its own behalf. Plaintiffs allege that over a multi-year period defendants improperly charged PFOF fees on millions of orders not subject to those fees. According to the complaint, those fees were charged as a result of at least two member broker-dealer firms incorrectly marking plaintiffs' orders as "customer orders" instead of "proprietary orders." The complaint alleges that defendants entered into stipulations under which the broker dealers paid penalties. In the instant action, plaintiffs seek restitution or recovery from defendants of all fees allegedly mischarged.

This is not the first time plaintiffs have brought these claims. They initially filed suit in the Circuit Court of Cook County, Illinois, on May 22, 2013, alleging that defendants charged PFOF fees "in violation of their own rules." That original complaint alleged that the amount of allowable fees "is set forth in fee schedules that are noticed, published and approved by the SEC," that defendants' activity "violates their own rules and/or fee schedules," that plaintiffs "suffered harm because the [defendants] overcharged PFOF fees in violation of SEC-approved fee schedules," and that a dispute existed between the parties as to whether defendants "are required to comply with their rules and fee schedules."

Defendants removed the original complaint to this court. One month later plaintiffs voluntarily dismissed it. That same day plaintiffs filed a new complaint, again in the Circuit Court of Cook County, Illinois. That complaint attempted to eliminate all reference to any violation by defendants of their own rules, replacing them with allegations that defendants charged fees that were not part of the "PFOF" Program." Instead of seeking a declaration that defendants "are required to comply with their own rules," the complaint sought a declaration that

3

defendants many not "charge PFOF fees on orders that are not part of the Exchanges' PFOF Programs."

Defendants again removed the case to this court. Plaintiffs moved to remand, which the court denied. Citadel Securities, LLC v. Chicago Board Options Exchange, Inc., 2013 WL 11319427 (N.D. Ill. Dec. 11, 2013). The court then granted defendants' motion to dismiss for lack of subject matter jurisdiction based on plaintiffs having failed to exhaust their administrative remedies before the SEC. Citadel Securities, LLC v. Chicago Board Options Exchange, 2014 WL 11370439 (N.D. Ill. Aug. 4, 2014). The Seventh Circuit affirmed both decisions. Citadel Securities, LLC v. Chicago Board Options Exchange, 808 F.3d 694 (7th Cir. 2015).

Plaintiffs then brought a petition for administrative remedy before the SEC, requesting that the SEC order defendants to pay plaintiffs' damages in an amount equal to the PFOF fees that plaintiffs claim were improperly charged. Plaintiffs did not identify any basis for the SEC's jurisdiction in their petition, and in fact expressly stated that the "[SEC] does not have jurisdiction over the market makers' petition pursuant to its Rules of Practice," and that the "[SEC] has no statutory authority to exercise jurisdiction over this matter." Defendants asserted that the SEC had jurisdiction under § 19(h)(1) of the Exchange Act, which authorizes the SEC to institute proceedings to determine whether an SRO has violated any of its own rules and to take appropriate remedial action.

On July 15, 2016, the SEC issued an opinion explaining why it disagreed with the Seventh Circuit's opinion that the SEC had jurisdiction, and dismissed plaintiffs' petition. In re Petition of Citadel Securities, LLC, et al., 2016 WL 3853760 (July 15, 2016) (the "SEC

4

opinion"). On September 13, 2016, defendant Chicago Board Options Exchange filed a petition for review of the SEC opinion with the Seventh Circuit. CBOE v. SEC, No. 16-3423. Plaintiffs and NASDAQ both moved and were granted leave to intervene. That matter remains pending in the Seventh Circuit. The day after CBOE initiated its appeal of the SEC opinion, plaintiffs filed the instant action. The instant complaint appears to be, with some minor irrelevant differences, the same complaint which this court dismissed previously.

## **DISCUSSION**

Plaintiffs' complaint asserts six state law claims. A state claim can be removed to federal court only if the federal court has original jurisdiction unless Congress provides otherwise. 28 U.S.C. § 1441(a); Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 474 (1998). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Id. at 475 (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). For proper removal, a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim, Gully v. First Nat'l Bank in Meridian, 299 U.S. 109 (1936), and a case may not be removed on the basis of a federal defense even if both parties admit that the defense is the only question truly at issue. Rivet, 522 U.S. at 475.

An "independent corollary" to the well-pleaded complaint rule is the principle that "a plaintiff may not defeat removal by omitting necessary federal questions." Id. (quoting Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 22 (1983)). If a court concludes that a plaintiff has "artfully pleaded" to omit necessary

federal questions, it may uphold removal despite the absence of a federal question on the face of the complaint. Rivet, 522 U.S. at 475. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claim, id., and where the plaintiff's state law claims "implicate significant federal issues." Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308, 312 (2005).

Defendants' removal is based on 28 U.S.C. § 1331 (federal question), and the Exchange Act's exclusive jurisdiction provision, 15 U.S.C. § 78a(a) ("§ 27"), which provides:

> The district courts of the United States . . . shall have exclusive jurisdiction of violations of this Chapter or the rules and regulations thereunder, and of suits in equity and actions at law brought to enforce any liability or duty created by this Chapter or the rules and regulations thereunder.

Plaintiffs' motion to remand argues that they have brought state law claims only, and that those claims do not implicate any federal issues. Defendants counter by arguing, as they did in the previous action, that despite plaintiffs' artful pleading, the complaint alleges that defendants violated their own rules by charging fees not authorized by their own fee schedules.

As an initial matter, defendants argue that this court's assertion of jurisdiction in the previous action, and the Seventh Circuit's affirmance, whether as law of the case or as a matter of precedent, controls the instant decision. Plaintiffs respond that the SEC's determination that it lacks jurisdiction and, more importantly, the Supreme Court's recent decision in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, ___ U.S. ___, 136 S.Ct. 1562 (2016), interpreting the breadth of the Exchange Act's exclusive jurisdiction provision, compels a different result.

The court disagrees with both positions. First, the SEC opinion is obviously not binding on this court, particularly since it is on review by the Seventh Circuit and, in any event, the decision means simply that plaintiffs have exhausted any potential administrative remedies. The

Seventh Circuit's decision, if unaffected by Merrill Lynch would, of course, be binding on the court and compel a denial of remand. Thus, the only issue is whether Merrill Lynch alters the decision reached by both this court and the Seventh Circuit, that plaintiffs' complaint raises claims that support federal subject matter jurisdiction. As discussed below, although Merrill Lynch may alter the analysis, the outcome remains the same.

In Merrill Lynch, the plaintiff sued Merrill Lynch and other financial institutions in New Jersey state court alleging that the defendants engaged in "naked short sales" of Escala stock, driving the price of the stock down and causing a loss to the plaintiff, who had held over 2 million shares. The complaint alleged that the defendants' actions violated the New Jersey Racketeering Influenced Corrupt Organization Act ("RICO"), New Jersey Criminal Code, New Jersey Uniform Securities Law, and New Jersey common law of negligence, unjust enrichment, and interference with contractual relations. The complaint specifically referred to the SEC's Regulation SHO, which regulates short sales, identifying Merrill Lynch's past violations of that regulation and suggesting that it had done so again, in addition to violating state law. Merrill Lynch, 136 S.Ct. at 1566-67.

Merrill Lynch removed the case to the federal district court asserting federal jurisdiction under both the general federal question statute, 28 U.S.C. § 1331, which grants district courts jurisdiction of "all civil actions arising under" federal law, and under § 27 of the Exchange Act. The plaintiff moved to remand arguing that neither statute supported subject matter jurisdiction. Id. at 1567. The district court denied the motion, but certified the question for immediate appeal.

The Third Circuit reversed and ordered remand to the state court, concluding that the general federal question statute, 1331, did not confer jurisdiction because all of the plaintiff's

7

claims were "brought under state law" and none "necessarily raised" a federal issue. Id. (citing Manning v. Merrill Lynch, Pierce, Fenner & Smith, 772 F.3d 158, 161-66 (2014)).  Next, the court held that § 27's exclusive jurisdiction provision covers only those cases involving the Exchange Act that would satisfy the "arising under" test of § 1331.  Id.  Because the court had already concluded that the district court lacked jurisdiction under § 1331, it concluded that there was no jurisdiction under § 27.

Merrill Lynch sought Supreme Court review of the Third Circuit's decision that jurisdiction under § 27 was limited to those cases "arising under" the Exchange Act. Recognizing a circuit split as to the breadth of § 27, the Court granted certiorari and affirmed the Third Circuit, concluding that the "arising under" test used to determine federal jurisdiction under § 1331 is the appropriate test.  Thus, it concluded that Section 27 provides exclusive jurisdiction of the same class of cases as "arise under" the Exchange Act for purposes of § 1331."  Id. at 1575.  Because Merrill Lynch had not challenged the Third Circuit's decision that there was no jurisdiction under § 1331, the Court concluded that there was also no jurisdiction under § 27.

The upshot of this is that the determination of whether plaintiffs' state law claims fall within § 27's exclusive jurisdiction provision, as held by both this court and the Seventh Circuit, requires a determination whether their claims "arise under" the Exchange Act.  Because neither this court nor the Seventh Circuit performed that analysis, and because Merrill Lynch specifically abrogated Sparta Surgical Corp. v. National Association of Securities Dealers, Inc., 149 F.3d 330 (9th Cir. 1998), a case on which the Seventh Circuit relied, further analysis is required.

8

The "arising under" test is satisfied in either of two circumstances. "Most directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted." Merrill Lynch, 136 S.Ct. at 1569. "But even when 'a claim finds its origins' in state law, there is a special and small category of cases in which arising under jurisdiction still lies." Id. (quoting Gunn v. Minton, 568 U.S. __, 133 S.Ct. 1059, 1064 (2013). A federal court has jurisdiction of a state-law claim if it "'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power." Id. (quoting Grable, 545 U.S. at 314)). This description covers cases in which a state-law cause of action "is brought to enforce a duty created by the Exchange Act because the claim's very success depends on giving effect to a federal requirement." Id.

Applying this test, the court concludes, as it did before, that it has jurisdiction over plaintiffs' claims. First, both this court and the Seventh Circuit have already held that plaintiffs' complaint, although artfully drafted, alleges that defendants violated their own rules, which are established and approved by the SEC as part of its regulatory function, and with which defendants are bound to comply under § 78s(g)(1) of the Exchange Act. The complaint thus raises a federal question, resolution of which is necessary to plaintiffs' claims. Plaintiffs' attempt to avoid this conclusion by characterizing their case as simply needing to "prove that the [defendants] took money from them to which [defendants] were not entitled." But, to show that defendants were not entitled to the fees, plaintiffs must show that defendants violated their own rules. Absent such a violation, defendants were entitled to assess and keep the fees. Thus, plaintiffs' claims necessarily implicate a federal issue.

9

Second, that federal issue is "actually disputed." Indeed, it is the central point of the dispute. Plaintiffs simply cannot win without showing that defendants violated their own rules.

The federal issue is also substantial. The substantiality inquiry examines the importance of the issue to the federal system as a whole, rather than the importance of the issues to the parties. Gunn, 133 S.Ct. at 1066 (2013). "[I] is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raises' a disputed federal issue . . .." Id. (emphasis in original). In the instant case, defendants play a central role in the national system of securities markets. "National Security Exchanges . . . are critical components of the National Market System, which provides the foundation for investor confidence in the integrity and stability of the United States capital markets." NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010, 1024 (2d Cir. 2014). Thus, the court concludes that whether defendants complied with their own rules and obligations that are designed to ensure that market makers that may trade with customers on the exchanges contribute to the cost of attracting that order flow, is "sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." Id.

Additionally, as defendants argue, lack of federal jurisdiction would threaten uniformity. See Grable, 545 U.S. at 312 (federal forum offers uniformity on federal issues). Subjecting defendants' obligations under their PFOF Programs to differing state contract law would be inconsistent with a national market system.

Finally, the issues raised are capable of resolution in federal court without disturbing the federal-state balance approved by Congress. The states have no particular interest in resolving

matters involving violations of rules approved by the SEC, unlike for example, in Gunn, when the Court noted that states have a "special responsibility for maintaining standards among members of the licensed professions." Gunn, 133 S.Ct. at 1068. Indeed, the fact that Congress has determined that jurisdiction should lie exclusively in federal courts for alleged violations of the Exchange Act and of the rules and regulations promulgated thereunder, is a strong signal that exercising federal jurisdiction over state claims that necessarily raise such allegations will not upset the congressionally approved federal-state balance of power. See NASDAQ, 770 F.3d 1030.

Consequently, the court concludes that plaintiffs' claims, although couched in state law terms, arise under the Exchange Act and jurisdiction in federal court is proper. Plaintiffs' motion to remand is denied.

## CONCLUSION

For the reasons described above, plaintiffs' motion to remand (Doc. 18) is denied. This matter remains set for a report on status on February 9, 2017, at 9:00 a.m.

**ENTER:  January 12, 2017**

_____
**Robert W. Gettleman
United States District Judge**